Cox's Adm'r *v.* Wood et al.

*Per Curiam.*—The judgment is affirmed, with costs.

*D. E. Palmer* and *J. A. Woodhull*, for the appellants.

---

Cox's Adm'r *v.* Wood *et al.*

VENDOR'S LIEN.—Where land is sold and conveyed to a married woman, and the purchase-money is not paid by her, the vendor's lien therefor will continue, and may be enforced against her by the sale of the land, but her separate note given to secure the same would be void.

MARRIED WOMEN.—*Semble*—that a married woman, by her separate contracts, may incumber or change her real estate, and her personal property acquired by devise, descent or gift, to the extent of the use and income arising therefrom, but no further, except for the purchase-money for real estate, which becomes an equitable lien thereon.

*Semble*, also—that the Legislature may limit the power of a *femme covert* over her legal fee-simple estates, for the purpose of protecting them for her benefit.

*Semble*, also—that a *femme covert* can not be personally liable on her contracts, but a judgment may be rendered against her, collectable out of the income of her separate estate; and if none such can be found upon which to levy, a receiver may be appointed to take and apply the income, in default of her voluntarily paying the judgment.

APPEAL from the *Bartholomew* Circuit Court.

PERKINS, J.—Suit by *John Cox*, administrator of *Jeffrey Cox*, deceased, against *Mary Wood*, *Abel Wood*, and *Henry Drake*, to enforce vendor's lien.

The cause was tried by the Court, who found specially as follows:

" The Court finds from the evidence that the said *Jeffrey Cox*, in his lifetime, sold and conveyed to the defendant, *Mary Wood*, the land in question, at and for the price agreed upon between them of 400 dollars; that the note in question was executed and delivered by said *Mary Wood* to said *Jeffrey Cox* for 200 dollars of said purchase-money, and that the said *Jeffrey Cox*, in answer to the question by said *Mary Wood*, as to how she should pay the residue of said purchase-money, said she might have that out of his personal property; that simultaneously with the execution of the note, a deed from said *Jeffrey* was delivered to said *Mary* for the land sold and purchased; that said *Mary* was the daughter of said *Jeffrey Cox*, and was then a married woman, living with her husband, *Abel Wood;* that said *Jeffrey Cox* died a few weeks after the conveyance of the land; that said *Henry Drake* subsequently purchased said land of the said *Mary Wood*, receiving a deed from her and her husband, *Abel Wood;* that at the time of the purchase, he had notice of the amount of unpaid pur-

---

Cox's Adm'r *v.* Wood et al.

---

chase-money oweing to the estate of *Cox*, and was indemnified against it."

On this special finding the Court held the law to be for the defendant, and rendered final judgment against the plaintiff. As *Drake* purchased with notice that a part of the consideration for the conveyance to *Mary Wood* was unpaid, he took subject to the lien of it, if the lien existed as against her, she being his grantor; and whether the lien could exist against her, she being a married woman, at the time of her purchase, is the question made and argued by counsel. At common law, a married woman might purchase, and receive a conveyance of, real estate; and if she paid the consideration in hand, at the purchase, the case was free from difficulty. Black. Comm., Book 2, p. 292; Reeves' Dom. Rel., 2d Ed., p. 118, and Note.

But if the conveyance was made upon her promise by parol, or in writing, to pay the purchase-money in the future, she was not personally bound by nor liable upon such promise; and if she had not a separate estate upon which such promise might operate as a charge by way of appointment, or the vendor had not, by operation of law, a lien upon the property conveyed for the purchase-money, it seems he was without remedy.

It appears reasonable that there should be, at common law, as administered through the Courts of Equity, a vendor's lien in such case, and it was so decided in *Hatch* v. *Morris et al.*, 3d Edw., Ch. Rep., p. 313, a case similar to the present.

Thus far we have considered the case as it would have stood prior to our legislation in, and subsequent to, 1852, upon "women's rights." But as the cause of action in the case at bar arose after the coming into force of that legislation, we may well inquire as to changes that legislation has worked in the law as it formerly existed.

Prior to the legislation mentioned, the property of a mar-

ried woman might be of two classes, viz., general and separate.

1. She might have the fee-simple title conveyed to her generally during marriage, or might have thus acquired that title before marriage; but of the property thus owned by her, her husband would have the use, during the marital relation, and might, by courtesy, have it after her death. Such property was called her general property. Cord's Rights of Married Women, ch. 11, sec. 255, *et seq.*

2. Property might be conveyed to the separate use of a married woman, free from the enjoyment or control of her husband; but the extent of the power of the married woman, being such grantee, in equity, over such separate property, might be limited and regulated by the conveyance which evidenced the grant of the property to her separate use. 1 Ld. Cas. Eq., p. 324. 1. The grant might be to her separate use without restriction. 2. It might be to her separate use, with power to anticipate the income, but without the power of alienation. 3. It might be to her separate use, but without the power of anticipation or alienation. 2 Spence Eq. Jur., p. 519.

And, in each case, the Courts confined the right of the married woman to whose use the conveyance was made, to charge or incumber the estate by contract or appointment, within the limits prescribed by the conveyance. Adams Eq., side page 44, *et seq.*, and cases cited; 2 Story's Eq., ch. 37; Hill on Trustees, side page 405, *et seq.*, 3d Am. Ed.

Taking now the case mentioned in the second subdivision above, viz., where real estate was conveyed to the separate use of a married woman, without the power of alienation, and limiting our observations to that, it may be asked, What right could the married woman exercise over such property? She could receive the rents and profits and dispose of them at will, and she could charge them in anticipation by her con-

tracts, but she could not dispose of, nor require her trustee to convey, the fee. That necessarily, in such case, remained where the conveyance to her use placed it. See the authorities above cited. The income constituted the fund upon which credit necessarily rested. And what was the object of conveyances to the separate use of the married woman? It was to place in her hands the means of support, and a provision for her children or heirs, independent of the husband and father.

And now, what provisions have been made by our late legislation touching the property of married women? That legislation provides that all the heretofore general property of the wife shall be placed in the class of separate estate, without the power of alienation. It enacts:

"Sec. 5. No lands of any married woman shall be liable for the debts of her husband; but such lands, and the profits therefrom, shall be her separate property, as fully as if she was unmarried: *Provided,* That such wife shall have no power to incumber or convey such lands, except by deed in which her husband shall join." 1 G. & H., p. 374.

It will be observed that this section is not limited to lands acquired in particular modes, as by devise, descent or gift, as is the case with personal property. 1 G. & H., p. 295. But it declares that "no *lands* of any married woman," &c.; and it does not forbid her to convey or incumber "the profits therefrom." It is thus manifest that the statute places all her real estate, owned formerly as general property, in the class of separate estate, without power of alienation, except, &c.

And what was the object of the Legislature in doing this? Certainly to provide her with means of support, and her children or heirs with a provision independent of the husband and father.

Interpreting our statutes, then, in the light of this course

Cox's Adm'r *v.* Wood et al.

of reasoning, it would seem that they make all the real estate heretofore held by married women in general property, and all the personal property owned by them at marriage, and that acquired afterward by *devise, descent* or *gift,* to be separate estate, without power of alienation, leaving personal property, acquired by any other than the specified modes, to go as at common law. And, we may observe, that we pass by the question how far, and in what instances, a special power, in the instrument conveying real estate to a married woman, authorizing her to convey without the concurrence of her husband, may be operative under sec. 16, p. 652, 1 G. & H.; whether, in short, that section relates alone to property of which she is trustee. Such separate property as is thus created by the statute, married women can charge or incumber, for some purposes, at all events, to the extent of the use, by their contracts.

In coming to the conclusion above arrived at, we have not intended to ignore the fact that the separate estate of a married woman, known to our law prior to the code of 1852, was an equitable, not a legal estate, and that the restrictions upon the power of the beneficiary were imposed by the donor or grantor of the estate as a part of the terms of the gift or grant; while the estate upon which the statute operates is a legal one. We admit all this, and still we see nothing inconsistent with the view we take. A married woman is, by law, under disabilities—is not regarded as capable of acting *sui juris*—is, if we may so express it, in a state of pupilage. Hence, while it might not be in the power of the grantor of the legal estate to an adult *compos mentis* person, not under any disability, to limit his power of using or disposing of it, the *jus disponendi;* see Williams on Real Property by Rawle, pp. 183, 187; 2 Spence Eq. Jur., p. 520; and while the State might not possess such power as to a person not regarded as under disabilities; see 9 Ind. Rep., p. 59; there can be no

doubt that the Legislature may limit the power of a *femme covert* over her legal fee-simple estates, so as to protect them for her benefit, just as effectually as a donor or grantor could do through a trustee.

Nor do we ignore the fact that the means of enforcing satisfaction of contracts of a *femme covert*, chargeable upon the income of her separate estate, in use against trustees holding the legal title to such estate, may not be adapted to the case where the legal title is in the *femme covert.* But it is in the power of the Courts to devise means adapted to the circumstances. A *femme covert* can not be personally liable, but a judgment could be rendered against her collectable out of the income of her separate estate; and if none such, for example, growing crops, &c., could be found upon which to levy, a receiver might be appointed to take and apply the income, &c., in default of the *femme covert* voluntarily discharging the judgment.

Applying, now, recognized principles to the facts of the particular case before us, we are able to say that Mrs. *Wood* was capable of purchasing and receiving the title of the land in question; that having done so, since the code of 1852, she became vested with the fee-simple title, but without the power of alienating or incumbering it, except by a conveyance jointly by herself and husband, but with power to use and to charge the rents and profits by her contracts, at all events, relating to the land itself. *Todd* v. *Lee*, 10 Am. Law Reg., p. 637, and note of Judge *Redfield*. Says Lord Justice *Turner*, in *March*, 1861, in *Johnson* v. *Gallagher*, as quoted by Judge *Redfield* in the note cited, "A court of equity having created the separate estate, [originally,] has enabled a married woman to contract debts in respect to it." And it may be that we might, in this case, well hold the note given for unpaid purchase-money as a valid contract, by Mrs. *Wood*, touching the separate estate with which she became

vested by her purchase, and chargeable upon its rents and profits.

But we think the vendor entitled to a lien for the unpaid purchase-money, and to enforce this is his better remedy. The vendor's lien is the creation of a court of equity, 1 Story Eq., p. 572; and it is as just to enforce it against a married woman as any other purchaser. It is not founded in contract. It is an equitable incumbrance, subject to which the property passes to the purchaser in equity, and within such limitations, restrictions, and with such exceptions as equity imposes. And to enforce this lien the fee-simple may be sold, even against a *femme covert*. The vendor's lien, says Washburn on Real Prop., Vol. I., p. 506, and notes, is a simple creation of equity, and does not exist at all in several of the States, and is not allowed elsewhere to prevail against creditors of the vendee, who become such without notice of the lien, as the equity of such creditors is superior to that of the vendor, who has neglected to take a mortgage, and thus contributed to place the property conveyed to the vendee before the public as a basis of credit to him. See, to the same point, *Moore* v. *Holcombe*, 3 Leigh, 597; *Webb* v. *Robinson*, 14 Geo., 216; *Work* v. *Brayton*, 5 Ind., 396.

In the foregoing opinion we have argued to show that where a married woman, the owner of property, is disabled by the terms of the conveyance of it to her use, or by the statute of the State, to alienate it, &c., it can not be charged with her debts, except that for the purchase-money, so as to cause its alienation by judicial or sheriff's sale for the payment of those debts. This view is further supported by analogies, for example: Where property is conveyed for a particular public use, as for a church, a market, &c., under such conditions and circumstances that the donee can not alienate it, it can not be subjected to sale for his debts. *Ketchum* v. *Indianapolis*, 12 Ind., 620; *Scott* v. *Stipe*, id., 74.

So says Blackstone, 3d Book, pp. 418, 419.  By the common law, a man could only have satisfaction of the goods, &c., and present profits of land, upon execution for debts, because the feudal principles forbid the alienation of lands without the consent, &c.; and if they might be sold for debt, the object and policy of the law might be defeated, &c.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further trial.

*Stansifer & Herod,* for the appellant.

*R. Hill* and *N. T. Hauser,* for the appellees.