## Johnson *v.* Runyon *et al.*

MARRIED WOMEN, PROPERTY OF.—Section 5 (1 G. & H. p. 374,) includes lands which the wife may acquire by purchase, as well as in other modes.

SAME.—Personal property acquired by a married woman, with the profits of her real estate, does not become the property of her husband by being left in his possession and use, and a sale of it on execution, for the payment of his debts, would not divest her title, or convey any title to the purchaser.

APPEAL from the *Johnson* Common Pleas.

DAVISON, J.—Replevin by the appellant, who was the plaintiff, against *Runyon* and *Crow*, to recover a horse. The issues were submitted to a jury, who, in answer to certain questions of fact, propounded to them at the instance of the plaintiff, found specially, and who, also, found a general verdict for the defendants. Motion for a new trial denied, and judgment.

It appeared in evidence, that the defendant, *Crow*, as constable, held two executions in favor of his co-defendant, *Runyon*, and against *Charnel C. Johnson*, the husband of the plaintiff, which were, by him, levied upon the horse in controversy, as *Johnson's* property. And hence this inquiry arises: Does the horse belong to the plaintiff? The evidence proves substantially these facts:

In *January*, 1861, the plaintiff bought of one *Moses Holeman* a tavern stand, in the town of *Franklin*, known as the *Johnson House*, for which he gave her a bond for a deed, upon the payment of the purchase-money. The consideration of the sale, as stated in the bond, was 700 dollars, viz: 100 dollars in hand, and the residue in installments of 200 dollars each, payable in one, two, and three years from the day of sale. The contract of sale was made at *Johnson's* house, and the plaintiff and her husband were both present; but the con-

tract was made with her. In *February*, 1861, the plaintiff and her husband executed a lease of the tavern stand to one *Beverly Dickerson*, for the yearly rent of three hundred dollars, who, in *June*, 1861, sent the horse in question to the plaintiff, in payment of rent, for which she executed to him a receipt, as follows:

*"Franklin, June* 25, 1861.

"Received of *Beverly Dickerson* one horse, at 100 dollars, on rent, for *Johnson House* property.

"CHARLOTTE JOHNSON."

The horse was delivered at the house of *Charnel C. Johnson*, the plaintiff's husband, and both she and her husband were present when the delivery was made. *James Crow*, the constable, being called, testified thus: "I levied on the horse as the property of *Charnel C. Johnson*. The levy was made in the evening of the 25th of *June*, 1861, by the direction of *Runyon*, the execution plaintiff. When I first went to *Johnson's* for the horse, I demanded property of him; but he declined giving any. *Johnson* told me that the horse was in his stable. I went to the stable. *Johnson* opened the stable door, put the halter on the horse, and led him out. The stable was on the lot occupied by *Johnson*." There was evidence tending to prove that the plaintiff, prior to the purchase of the *Johnson House*, had no property or money of her own; that *Johnson*, before the horse was delivered, told *Dickerson* that the plaintiff would receive him in payment of the rent, and that she, plaintiff, had paid to *Holeman* 37 dollars of the purchase-money, &c.

Upon the defendants' motion, the Court thus instructed the jury: "1. If the horse was purchased by *Mrs. Johnson*, with her own money, or if she got him on payment of rent due her, and, afterwards, the horse came into the possession of her husband, the horse is subject to the execution. 2. If

the plaintiff and her husband lived together, and the horse was found on the premises on which they resided, under the control of the husband, it would amount to a possession, in law, by the husband."

These instructions, in effect, concede that the property, when the plaintiff received it, was her separate property; but they assume, that the mere fact that it came into the possession, and was under the control, of her husband, made it subject to the execution, as his property. It is not important to inquire, whether, in view of the common law rule, the doctrine enunciated in the instructions would be correct; because their validity depends on the construction to be given to our statutes in relation to the rights of married women. The revision of 1852 provides, that "no lands of any married woman shall be liable to the debts of her husband; but such lands, and the profits arising therefrom, shall be her separate property, as freely as if she were sole and unmarried: *provided*, that such wife shall have no power to incumber, or convey such lands, except by deed, in which the husband shall join." 1 R. S. G. & H. p. 374, sec. 5. It may be noted, "that this section is not limited to lands acquired by devise, descent or gift, as is the case with personal property." *Id.* p. 295. *Cox's Adm'r* v. *Wood et al.,* 20 Ind. 54. But it includes lands which the wife may acquire by contract of purchase, and declares, that "the profits arising therefrom shall be her separate property." Now, if the horse in question was a profit arising from her real estate—and the instructions concede, hypothetically, that it was—the property in it became vested in the plaintiff, as her separate property, and it was not, as we construe the statute, subject to her husband's debts. As the plaintiff and her husband resided together, the property may be regarded as having been in his possession and use, and that would be *prima facie* evidence of ownership. Still, however, the title to the property was in the plaintiff, and

---

not in her husband.   He could not have lawfully sold it, because, as a general rule, and this case is not an exception, "one who has no title to a chattle, can give no title."   Story on Sales, sec. 199.   And it is equally clear, that a sale of the property, on execution, for the payment of his debts, would not divest the plaintiff of her title, nor would it convey any title to the purchaser.   The appellee refers to *Mahoney* v. *Bland*, 14 Ind. 176, but that case is not in point.   We are of opinion that the instructions, to which we have referred, should not have been given, and on that ground alone the judgment will be reversed.

*Per Curiam.*—The judgment is reversed, with costs.   Cause remanded.

*T. W. Woolen* and *C. F. McNutt*, for the appellant.
*Overstreet & Hunter*, for the appellees.