## STOUT v. PERRY ET AL.

HUSBAND AND WIFE.—*Wife's Right to Profits of her Real Estate.—Execution.*—Under section 5, 1 R. S. 1876, p. 550, crops grown upon the land of a married woman are her separate property, and are not subject to execution to pay the debts of the husband.

SAME.—*Tenant of Wife.—Agreement.*—Where there is no express agreement, no implied agreement between husband and wife will arise, that the husband is the tenant of the wife, where they live, as a common family, on the land of the wife; and the crops raised thereon by him belong to her.

From the Benton Circuit Court.

*J. R. Troxell*, for appellant.

*J. T. Sanderson*, for appellee.

BIDDLE, J.—The appellees sued the appellant, to recover the value of a field of standing corn, which they allege the appellant gathered, took away and appropriated to his own use. The appellees claim by purchase under a sheriff's sale; the appellant by purchase under a subsequent constable's sale. The pleadings need not be stated; no question is made upon them; they are sufficient to support the proper judgment, according to the facts found.

The special finding of the court, and the conclusions of the law thereon, are as follows:

"The plaintiff John G. Perry, on April 17th, 1877, recovered judgment in the Benton Circuit Court, against Henry B. Henderson, for $150.85 and costs. The plaintiff Cyrus Slawson, on the same day and in the same court, also recovered judgment against said Henderson, for $92.38, and costs. Both judgments bore interest at the rate of ten per cent. from date, and were collectible without the benefit of appraisement laws. An execution was duly issued on May 1st, 1877, on each of these judgments, and placed in the hands of the sheriff of Benton county, who, on July 11th, 1877, levied both of said executions on forty acres of growing corn in said county. After legal notice,

said corn was duly sold at sheriff's sale, on October 13th, 1877, to the plaintiffs, for $160, which was properly credited on said executions. Said corn was levied upon and sold under said executions as the property of said Henry B. Henderson—the return of the officer thereon showing that said levy was made by the direction of said Henderson. This statement in said return is denied by said Henderson, in his evidence in this case.

" On January 16th, 1877, the defendant, John Stout, duly recovered judgment before a justice of the peace of said Benton county, against said Henry B. Henderson, for $97.25 and costs, collectible without benefit of appraisement laws. On February 23d, 1877, Elizabeth Henderson, wife of said Henry, became, in due form of law, replevin bail for stay of execution on said judgment. On October 1st, 1877, an execution was issued by the justice, against the property of Henry B. and Elizabeth, and was duly levied by the constable upon the same forty acres of corn, levied upon as aforesaid, by the executions in favor of the plaintiffs. After legal notice, the constable duly sold the corn, at public sale, to the defendant, Stout, on October 24th, 1877, for $50, which was credited upon the execution. Under this last execution, the corn was levied upon and sold as the property of said Elizabeth—the return of the constable showing that it was levied upon by her direction.

" Claiming title under the purchase at said constable's sale, the defendant, Stout, prior to the commencement of this action, took possession of and gathered said forty acres of corn, and appropriated the whole of the same to his use, without the plaintiffs' consent. There were one thousand bushels of said corn. It was of the value of $100, in the field, at the time the defendant took possession of it. Said corn was grown upon a part of a farm upon which said Henderson and Elizabeth Henderson, husband and

wife, resided during the year 1877. Said farm, since October 26th, 1876, has been the separate property of the said Elizabeth. Said farm, including said forty acres in corn, was cultivated by said Henry B., by his own labor and the hired labor of others paid for from the products of the farm. The farming implements and teams, except one horse belonging to said Elizabeth, used in the cultivation of said farm, were the property of said Henry B. He cultivated said farm, and disposed of the proceeds thereof, the same as if the farm was his own. There was no express contract whatever between the said Henry B. and Elizabeth, respecting his occupancy and cultivation of said land, but he occupied and cultivated the same with her knowledge and without objection on her part.

"The rental value of said land for 1877 was equivalent to the value of one-third of the crops raised thereon.

"As conclusions of law upon the foregoing facts, the court finds that said Henry B. occupied said lands as the tenant of said Elizabeth; that two-thirds of said forty acres of corn, as his property, was subject to execution, to pay the plaintiffs' judgment; that one-third of said corn, as her property, was subject to execution to pay the defendant's judgment; and that, by said judicial sales, the plaintiffs became the owners of two-thirds, and the defendant of one-third, of said corn. Wherefore the court finds for the plaintiffs, and assesses their damages at $133.33."

The first question to settle is, was the corn, or any part of it, thus grown upon the lands of Elizabeth Henderson, the property of Henry B. Henderson?

The statute of May 31st, 1852, 1 R. S. 1876, p. 550, enacts as follows:

"Sec. 5. No lands of any married woman, shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried."

It is clear that the corn in this case was of the profits of the wife's lands ; it was therefore not subject to execution to pay her husband's debts. The case of *Montgomery* v. *Hickman*, 62 Ind. 598, we think, settles the question. That case is similar to this, and has been followed in the case of *Patton* v. *Rankin*, 68 Ind. 245.

The following preceding cases are also in harmony with the same rulings : *Johnson* v. *Runyon*, 21 Ind. 115 ; *Woodward* v. *Lindley*, 43 Ind. 333 ; *Cooper* v. *Ham*, 49 Ind. 393 ; *Carver* v. *Carver*, 53 Ind. 241.

We think the court erred, as a conclusion of law from the facts found, in holding that the husband was the tenant of the wife. The finding shows that there was no such express agreement, and no such implied agreement will arise between husband and wife, living together as a common family, concerning matters which go to the support and benefit of the household. As between members of a family, living together in a common household, no implied contract will arise for services rendered, or benefits received, in the common support of the household. This law is well settled. *Resor* v. *Johnson*, 1 Ind. 100 ; *Oxford* v. *McFarland*, 3 Ind. 156 ; *House* v. *House*, 6 Ind. 60 ; *Maghee* v. *Baker*, 15 Ind. 254 ; *Adams* v. *Adams*, 23 Ind. 50 ; *Cauble* v. *Ryman*, 26 Ind. 207 ; *Garner's Adm'r* v. *Board*, 27 Ind. 323 ; *King's Adm'r* v. *Kelly*, 28 Ind. 89 ; *Wills* v. *Wills*, 34 Ind. 106 ; *Hays* v. *McConnell*, 42 Ind. 285 ; *Richards* v. *O'Brien*, 64 Ind. 418 : *Dame* v. *Coffman*, 58 Ind. 345.

Whether the entry of replevin bail by Elizabeth Henderson, on the docket of the justice of the peace, for Henry B. Henderson, was valid or not, whether, if valid, she is estopped by directing the levy to be made upon the corn, or not, and whether the appellant took any title to the corn, as against the Hendersons, by his purchase under the constable's sale, or not, are questions we need not

decide. Admitting that the appellees took color of title to the corn, by their purchase under the sheriff's sale, sufficient to maintain the action against a wrong-doer, yet, as they took no property in the corn by their purchase as against the Hendersons, they can not maintain the action against the appellant, who has color of title from the Hendersons, which is yet undisputed. In other words, the appellees can not maintain the title to the corn, merely by showing that the appellant had no title, unless they can show that they had title in themselves sufficient to maintain the action.

The judgment is reversed, at the costs of the appellees, and the cause is remanded, with instructions to find for the appellant, as a conclusion of law from the facts stated in the special finding, and to render judgment accordingly.