## BLAKE, RESPONDENT, *v.* DICK, APPELLANT.

[Submitted January 17, 1895. Decided January 28, 1895.]

LANDLORD AND TENANT—*Implied warranty in lease.*—In an ordinary lease of a dwelling there is no implied warranty on the part of the lessor that the premises leased are in a tenantable condition, or that they would be kept in that condition.

SAME—*Action for rent—Burden of proof.*—Where, in an action for rent, the defendant, in his answer, admits the execution of the lease and the nonpayment of rent, he assumes the burden of proof to escape liability under the terms of the lease.

SAME—*Inspection of premises by tenant—Risks assumed.*—When, before leasing, the tenant inspects the premises, he takes the risk of their condition, in the absence of any fraudulent concealment by the landlord, and he cannot complain because the landlord did not disclose defects in respect of which he had full opportunity of informing himself.

SAME—*Removal of nuisance by landlord.*—Where the cellar of the leased premises becomes flooded with filth and water from the adjoining premises of the landlord, but not by reason of any default on his part, and he gratuitously undertakes to remove the same, but fails, this affords the tenant no justification in abandoning the premises.

SAME—*Liability in respect of nuisance.*—Where a landlord cannot be held liable for the creation of a nuisance on the leased premises he cannot be held responsible for any act, not negligently or wrongfully done, in voluntarily, by request of the tenant, trying to abate the nuisance.

SAME—*Waiver of right to avoid lease.*—If a tenant, with full knowledge of the condition of the premises, abandons them, but soon afterwards returns and remains, he thereby waives any right to avoid the lease by setting up fraud or deceit on the part of the landlord as to the condition of the premises at the time of leaving, and such conduct is also inconsistent with a claim on his part that he was evicted.

SAME—*Surrender of lease—Agency.*—An agency to collect the rent of premises does not, by implication, and without further proof of authority, carry with it the right to accept a surrender of the lease.

SAME—*Same—Delivery of key to premises.*—The delivery of the key to leased premises to the landlord's agent, who is only authorized to collect the rents, and its retention by the landlord, and a subsequent offer of the premises to let, are not of themselves sufficient to constitute an acceptance of a surrender of the lease.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for rent. Judgment was rendered for the plaintiff by BUCK, J. Affirmed.

Statement of the case by the justice delivering the opinion:

Blake sued Dick for one hundred and twenty dollars, rent due by Dick for certain premises, for the months of October, November, and December, 1891, under the terms of a lease made April 16, 1891, wherein Blake leased a certain dwelling-house in the city of Helena to Dick, for one year from May 1, 1891, at a rental of forty dollars per month, payable in advance. There were no covenants of any kind whatever wherein the landlord Blake agreed to keep the premises in repair or tenantable.

The defendant, by answer, admitted the lease, denied any debt under it, and set up that, after entering into the lease and while occupying the premises, the same became untenantable on account of defects in the location and construction of the dwelling, by means of water flowing into the basement-room and washing large quantities of mud and filth from the back yard into said apartment, so as to render the same unfit for use, and dangerous to the health of defendant and his family. Defendant also pleads that Blake agreed to render the place fit for use and tenantable, being notified by defendant so to do, and did thereafter partially remedy the same, but neglected to remedy the primary cause of the deposit of water and filth, and that at the occasional rains of the season the basement became flooded with water flowing down from the rear of the premises, carrying mud and filth from the back yard, so as to render the place untenantable and dangerous to the health of defendant and his family. Defendant then says that, at various times, he notified Blake of the condition of the premises, and requested him to remedy the same, or that he would have to leave and abandon the lease, and that Blake partially removed the mud and filth, but spread the same over the yard, rendering the place unfit for habitation and more dangerous to the health of the occupants, and that because Blake neglected to make the premises habitable, and on account of their unhealthy and un-

tenautable condition, defendant removed on September 13, 1891, and abandoned his lease, notifying plaintiff and surrendering possession.

It is further set forth that Blake accepted the premises, has been in possession since and offered the place for rent, and that the defendant paid rent for September, and since the abandonment has not claimed possession or control.

The plaintiff denied all the affirmative matter set forth in defendant's answer.

The cause was tried to a jury. At the close of the defendant's testimony, upon motion of plaintiff and by instructions of the court, the jury returned the verdict for the full amount claimed in the complaint, one hundred and twenty dollars. Judgment was entered for said sum. A motion for new trial was made and overruled. Defendant appeals.

*J. W. Kinsley,* for Appellant.

1. Defendant claims that there was fraud in obtaining the lease. And if fraud has been perpetrated by the landlord on the tenant, and if the tenant rescind his contract at once on discovering the fraud, he may avoid his responsibility. (*Milliken* v. *Thorndike,* 103 Mass. 385; 1 Taylor's Landlord and Tenant, § 176.) If the tenant is unable to discover the defect before entry he is not responsible for rent if the premises cannot be occupied for the purposes rented. (*Leonard* v. *Armstrong,* 73 Mich. 577; 1 Taylor's Landlord and Tenant, § 175 a.) The tenant is not responsible for the condition of the premises and can take advantage of misrepresentation or active concealments by his landlord. (*Id.*) If the lessor knows the premises to be unfit for occupation, and the lessee does not know it, then the withholding of information by the former amounts to deceit practiced upon the latter. (*Cutter* v. *Hamlen,* 147 Mass. 47; *Cesar* v. *Karutz,* 60 N. Y. 229; 19 Am. Rep. 164; *Minor* v. *Sharon,* 112 Mass. 487; 17 Am. Rep. 122; *Maywood* v. *Logan,* 78 Mich. 135; 18 Am. St. Rep. 431; Taylor's Landlord and Tenant, § 382.)

II. Although the landlord may not be liable to make repairs, yet, if he assumes to do so, he is liable therefor, and it becomes incumbent upon him to do it properly. (*Gill* v.

*Middleton,* 105 Mass. 478; 1 Taylor's Landlord and Tenant, § 175.)

III. The nuisance maintained by the plaintiff on an adjoining lot rendered the lower part of the house absolutely untenantable and the upper part of the house dangerous to live in. And if a tenant cannot occupy all the premises contracted for, he is under no obligation to accept any thereof. (*Tyler* v. *Disbrow,* 40 Mich. 416; 1 Taylor's Landlord and Tenant, § 177.) If the landlord creates a nuisance so near the demised premises as to deprive the tenant of the use of any portion thereof it is equivalent to an eviction and justifies the tenant in quitting possession. (*Skully* v. *Shute,* 132 Mass. 369; *Boreel* v. *Lawton,* 90 N. Y. 295; 43 Am. Rep. 170; *Collender Co.* v. *Rees,* 69 Wis. 442; 2 Am. St. Rep. 748; 1 Taylor's Landlord and Tenant, § 381); and if the tenant abandon the premises on account of nuisance he may resist the payment of rent by showing that his landlord created the nuisance (1 Taylor's Landlord and Tenant, § 316); and, if the tenant is ousted from any material part of his premises, he may treat it as an eviction from the whole, and will not longer be liable for any rent. (*West Side Sav. Bank* v. *Newton,* 76 N. Y. 616; Taylor's Landlord and Tenant, § 315.)

IV. The key was surrendered to the party from whom the place was rented, and it was kept by him without objection, and he thereby took possession of the premises and offered them for rent upon his own account. The surrender is good whether made to the landlord or another on his behalf, and the surrender may also be implied from the circumstances of the case and the acts of the parties. (*Amory* v. *Kannoffsky,* 117 Mass. 353; 19 Am. Rep. 416; *Matthews* v. *Tobener,* 39 Mo. 119; *Talbott* v. *Whipple,* 14 Allen, 180; *Hanham* v. *Sherman,* 114 Mass. 22; *Kneeland* v. *Schmidt,* 78 Wis. 345; 2 Taylor's Landlord and Tenant, § 515.) If the landlord lets premises without notice to the tenant it dispenses with the surrender on the part of the tenant. (*Williams* v. *Jones,* 1 Bush, 627; 2 Taylor's Landlord and Tenant, § 516.)

V. If damages are unliquidated the tenant may simply recoup as against the landlord's claim for rent. (1 Taylor's Landlord and Tenant, § 374.)

*M. Bullard,* for Respondent.

Hunt, J.—The lease between Blake and Dick was the ordinary contract between landlord and tenant; there was therefore no implied warranty on the part of Blake that the dwelling-house leased was in tenantable condition, or would be kept in such condition; nor at the time of the original contract between the parties was there any obligation on Blake's part to make any repairs of the cellar or ground. These rules of law are too well settled to require a citation of authorities to support them. (*Bowe* v. *Hunking,* 135 Mass. 383, and cases cited.)

Defendant, in his answer, having admitted the execution of the lease and nonpayment of rent, assumed the burden of proof to escape liability under its terms. He was asked " if there was any change in the condition of the basement about that time [meaning July, 1891] from what he found it." This question was objected to and the objection sustained, whereupon defendant made the following offer of proof:

"I now offer to show that these premises were so situated that any rain or storm was liable to flood this basement and render it unfit for use; that at the time this defendant leased this building it was warm, dry weather, and that defect was not apparent to him at the time; that tenants who had occupied the building before this defendant had occupied it complained and were obliged to leave on account of a similar defect; that, by the rain of about July 4th, this cellar was filled with filth, manure, mud, and water, which ran into it from a stable-yard belonging to the plaintiff on the premises immediately adjoining; that the basement was filled with water to the depth of some six or eight feet, and also with the filth from the barnyard; that it remained so for some week or ten days; that the plaintiff or his agent came there and offered to remove it, admitted that they were liable to remove it, and undertook to remove it; that they took it from the basement and spread it around in the yard of the premises, and left it in manure piles and piles of rubbish and garbage, and that these piles of rubbish and garbage so distributed upon the premises rendered the whole premises unfit for occupation; and that by reason of this change in the premises, making it dangerous to

the health and lives of the family of the defendant, he was obliged to and did surrender the premises to the plaintiff."

Plaintiff objected to the offer, upon the ground that such proof was irrelevant and immaterial, and, if established, would constitute no defense to the complaint. The court sustained this objection.

The defendant contends that because the facts in relation to the situation of the premises, and the construction of the dwelling-house, and the liability of the water to run down into the cellar, were not apparent to him at the time he leased the property, it became the duty of the landlord to disclose all such "defects" to him, and that not having done so he was guilty of fraud in procuring the lease. But the tenant cannot complain. The landlord did not warrant the condition of the premises; the tenant, by the evidence, inspected them; he took the risk of their condition. (Taylor's Landlord and Tenant, § 328.) We find no plea of concealment by the landlord of any fact of which the tenant did not have full opportunity of informing himself, and, accepting, as we do, all the facts to be true as pleaded and offered, in relation to the occasional rains causing draining of water into the cellar from the stable-yard of the landlord, there can be no deduction that, by reason of such overflow or drainage, there was any suppression of the truth, or any concealment of facts, or other conduct positively or inferentially fraudulent on the part of the plaintiff before or at the time of the execution of the lease. *Milliken* v. *Thorndyke*, 103 Mass. 385, relied on by appellant, was decided upon a wholly different state of facts from that in this case. There the lessees set up that before the execution of the lease they had a conversation with the lessor, and that by the false representations of the lessor of material facts which he knew to be false when he made them, or positively affirmed as of his own knowledge, they were induced to sign the lease, and that such conduct was fraudulent, and rendered the lease null and void. And the decision in that case was based entirely upon the ground that by the deceit of the landlord and the abandonment of the premises immediately upon the discovery of the fraud the defendant could obtain relief. The case has no application. Here Blake, the landlord, was not obliged by any rela-

tion of the parties to the lease under consideration, to remove the mud and filth from the cellar. His act in so doing was therefore gratuitous, and any agreement on his part to remove it was without consideration and void. (*Purcell* v. *English,* 86 Ind. 34; Wood's Landlord and Tenant, § 382.)

The further argument, that the landlord incurred a liability when he undertook to remedy the defect but failed, might be applicable, under proper averments, in tort, upon the principle, however, that where a person has assumed to make repairs, and has failed to exercise a proper degree of care in making them, and injury results, redress is afforded the injured party, independent of any contract existing between the parties. But there is no such plea or contention before us.

The defendant next says that by the spreading of the filth upon the yard the premises became unfit for habitation and more dangerous to the health and lives of the family of defendant, and thus a nuisance was created which constituted an eviction, and justified him in quitting the possession. The facts show, however, that the primary nuisance was the filth in the cellar, which made the premises unfit for use and dangerous to health. For this condition and its causes the landlord was not liable, and where he cannot be held liable for the creation of the nuisance we hold he cannot be held responsible for any act not negligently or wrongfully done involuntarily, by request of the tenant trying to abate it. Moreover the conduct of the defendant Dick is inconsistent with the claim on his part that he was evicted. He swears that he left the premises in July, but after about ten days' absence returned, and remained in them until September. We are of opinion that by his return and stay he waived any rights he may have had to set up fraud, deceit, or eviction. (Wood's Landlord and Tenant, § 481; Gear on Landlord and Tenant, § 160, and note.)

Defendant finally pleads a surrender. He testified, that, when the October bill for rent was rendered to him, he returned the key, writing at the foot of the bill rendered that he considered the house untenantable, and refused to pay any more rent, and that he afterward saw a notice "For Rent" posted upon the premises. The key and note were delivered

to a Mr. Hopkins, who worked for Wallace & Thornburgh, from whom defendant hired the premises, and who appear to have offered the house for rent in September after defendant vacated. But no surrender is proved. The defendant did not establish any authority whatever in Hopkins to terminate the lease, or to consent to the abandonment of the premises. (*Thomas* v. *Nelson*, 69 N. Y. 118.) Even granting that Hopkins, as a clerk of the agents of the landlord, had authority to collect the rent from the defendant, such authority was a recognition of the existence of the contract, and that it would continue in force; but an agency to collect the rent of premises does not, by implication, and without further proof of authority, carry with it the right to accept a surrender, where a tenant, without legal justification, has quitted the premises before the term is completed. (*Woodward* v. *Lindley*, 43 Ind. 333; *Bayliss* v. *Prentiss*, 75 N. Y. 604.)

The appellant argues that the conduct of the landlord, however, in not returning the key, and in offering the house for rent, amounted to an acceptance and release. But it was not incumbent upon the landlord, if he got the key, to seek out the tenant and return it to him. And we hold that in the absence of any testimony of a surrender to the landlord himself, or of any acceptance of the premises by him, or by his authorized agents, proving an intent to consent to an abandonment by the tenant, the delivery of the key to Hopkins, and its retention, and a subsequent offer to rent, are not, without further evidence, sufficient to relieve the tenant of rent due under the lease for such time as the house was empty. (*Nelson* v. *Thompson*, 23 Minn. 508; *Withers* v. *Larrabee*, 48 Me. 570; *Ladd* v. *Smith*, 6 Or. 316; *Bowen* v. *Clark*, 22 Or. 566.)

In conclusion, upon a review of the authorities and facts, we are of opinion that there was no eviction and no surrender by agreement, or by operation of law, and that the direction to the jury to find for the plaintiff was correct.

The order denying a motion for new trial, and the judgment are affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.