CASE 75—PETITION EQUITY—NOVEMBER 10.

# A. R. Hathaway, &c. v. George H. Yeaman.

### APPEAL FROM DAVIESS CIRCUIT COURT.

1. A SEPARATE ESTATE IN HIS DAUGHTERS WAS CREATED BY THE FOLLOWING PROVISIONS OF THE TESTATOR'S WILL:

    "My will is that all my available means, as fast as they come to hand, be immediately converted into bank stock. . . My bank stock as purchased I wish transferred at once to my children, who will have the use unconditionally of one thousand dollars to each of them; the balance they will have the interest of as it accrues during their lives, and they are not at liberty to will it as they please, or sell out for life-annuities. My object is to secure them against want during their lives."

    Under the judgment of the circuit court a part of the bank stock of one of the daughters, acquired and held under the will, was invested in real estate, which was conveyed to her husband in trust for the use and benefit of said daughter, "and her heirs forever. It being the intention hereby to invest her with the same estate in said land that she took under the will of her father, . . . and at her death to pass by descent and distribution, in the same manner and to the same persons, as such bank stock would have done." *Held*, that the daughter has a separate estate in the property, and, although the character of the property is changed from personalty to realty, the same consequences attach to it, and it can not be alienated unless it be to reinvest for the separate use of the wife.

2. *An estate to the separate use of a married woman* may be created before her marriage.

3. *No particular form of words* or expression is material in creating a separate estate.

4. *All that is required* to create a separate estate is, that the intention of the gift should appear manifestly to be for the wife's separate enjoyment. (Clancy on Rights, 262–64.)

GEORGE W. WILLIAMS, }
CAMDEN RILEY, . . }  . . . . . . For Appellants.

W. T. OWEN, . . . . . . . . . . . For Appellee,

CITED

Coke upon Littleton, 1 American edition, 223, A.
4 Kent, side page, 134. · 7 Dana, 437.
1 Smith's Leading Cases, 100–103, Dumpord's case.
1 Jarman on Wills, 681.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT.

On the 25th of March, 1871, appellee filed his petition in the Daviess Circuit Court against appellants, alleging therein that he holds two promissory notes of the defendants, A. R. Hathaway and James Alsop, for the sum of three thousand eight hundred and twenty-five dollars, executed on the 25th day of January, 1870, and due and payable on the 25th day of January, 1871, and 25th day of July, 1871, and filed the notes as parts of his petition.

He also alleges in said petition that on the 10th day of March, 1870, appellant, John A. Faulds, by his two promissory notes agreed to pay him the sum of seven thousand dollars, each for three thousand five hundred dollars—one due on or before the 10th day of March, 1871, and the other on the 10th day of September, 1871—which are also filed with the petition; that the notes by Hathaway and Alsop were executed for thirty-one and a half acres of land, and those by John A. Faulds for twenty-one and a half acres, sold by appellee to them, which two pieces or parcels constitute the tract of land purchased by appellee, as trustee for his wife, Lelia P. Yeaman, from Charles B. Comb and others, and conveyed to him as trustee for his wife by the several persons named in the petition as grantees, on the 10th day of April, 1858. The deeds are filed as exhibits. He avers that by said deeds a fee-simple general estate in said land was vested in him in trust for his said wife, and that he and his wife have the legal power to sell and convey the same; and they tender deeds signed, duly stamped, and acknowledged, to said purchasers for their

respective parcels of said land.   He alleges that he has a lien
on said land for the payment of the purchase price owing
therefor, which he prays may be enforced, and for a judgment
for his debts, and for general relief.

Appellants answer jointly, and expressly waiving all ob-
jections to the misjoinder of causes of action and of parties,
say they admit they executed the notes at the times and for the
considerations as charged in the petition, and that they are
desirous to consummate the purchases, and pay for the parcels
of land contracted for by them, if they can be assured that
appellee and his wife are able to make them a perfect legal
title thereto.   But they aver that Robert Triplett, the father
of Mrs. Yeaman, directed in his will that his estate should be
invested in bank stock by his executors, to be held by them,
and the dividends be applied to the comfortable support of
his children, and that said stocks should not be sold during
their lives; that by a judgment of the court, on the peti-
tion of appellee and wife against the executors of Robert
Triplett, a portion of the funds left by him were, contrary to
the directions of his will, invested in the land now contracted
by appellee to be sold to them, which land is held by him in
trust for his wife, formerly Lelia Triplett; that the circuit
court adjudged that appellee should hold the land in trust for
his wife, just as the bank stock when procured was directed
by said testator to be held; and that appellee having under-
taken the trust, and the land having been conveyed to him as
trustee, he holds it with all the limitations and restrictions
which would attach to the bank stock if the money had been
so invested, and that neither he separately, nor jointly with
his wife, has the power to alienate said land, and resist the
payment of the notes on the ground that appellee is unable
to make them a good and sufficient title to the land for which
they were given.

A demurrer was sustained to the answer, and appellants

failing to plead further, judgment was rendered against them, and they have appealed.

Appellee purchased the land from three vendors, who conveyed to him their respective parcels by separate deeds, the *habendums* of which are in the same language, and are as follows: "To have and to hold to him, the said George H. Yeaman, in trust for the use of the said Lelia P. Yeaman and her heirs forever, it being the intention hereby to invest her with the same estate in said land that she took under the will of her father, Robert Triplett, deceased, and at her death to pass by descent and distribution in the same manner and to the same persons as such bank stock would have done."

To determine what estate Mrs. Yeaman has in the land it is necessary to ascertain whether she took a limited or an absolute title to the bank stock devised to her by her father. Although the will is a perplexingly voluminous instrument, the following paragraph seems to contain all that pertains to the question under consideration:

"My will is that all my available means, as fast as they come to hand, be immediately converted into bank stock, and as my debts appear, that bank stock enough be sold to pay them, and that no assets be kept on hand to pay debts which can be paid out of the bank stock, or the interest arising therefrom, and that before any payment is made it shall have the sanction of all my executors. I appoint W. B. Pegram, James Weir, and Samuel Wing my executors.

"This schedule is an appendage to my will of October 29, 1852. My bank stock as purchased I wish transferred at once to my children, who will have the use unconditionally of one thousand dollars to each of them; the balance they will have the interest of as it accrues during their lives, and they are not at liberty to will it as they please, or sell out for life-annuities. My object is to secure them against want during their lives."

An estate to the separate use of a married woman may be created before her marriage, and whenever a trust of property, expressed to be for the sole and separate use of a woman, independent of any husband she may thereafter have, upon her marriage no question can arise as to her rights, and that the husband will be excluded from any participation in it, because that is the proper technical phraseology universally adopted by conveyancers to create such estates. But it is not absolutely necessary that this technical language should be used for that purpose; several other expressions have been held sufficient. Indeed, it seems that no particular form is material, and all that is required is that the intention of the gift should appear manifestly to be for the wife's separate enjoyment.

In one case it was held that a bequest made to a married woman of property "*to be at her disposal*" gave her a separate estate. In Tyrrell v. Hope, Lord Hardwick held that a promise in writing, by the intended husband to his intended wife, that she should receive and enjoy the issues and profits of one moiety of the estate then in possession of her mother after the decease of her mother, "gave the wife an estate to her separate use," and many other cases are cited to the same effect. (Clancy on Rights, 262–4.)

The testator in the case under consideration gave to each of his daughters one thousand dollars, to be used by them "*unconditionally*," or, as he must have intended, as they pleased. As to the residue, they were to have the interest as it accrued during their lives, his object being, as he expresses it, "to secure them against want during their *lives*."

Does this language impress any one who reads it that the testator intended to invest his daughters with the absolute title to this property, and upon their marriage that it should vest solely in their husbands, it being personalty? If that was his purpose, why would he give to each one one thousand

dollars "*unconditionally,*" or without limitation, and as to the residue restrict them to the use of the interest or profits during their lives? And is not the declaration that he makes that disposition of the property to secure them against want incompatible with an intention on his part to give to the husband or husbands of his daughters any dominion over this property? If that was his intention, he was singularly unfor-. tunate in the language he used to give expression to it, nor do we think it susceptible of such a construction.

We conclude therefore that Mrs. Yeaman has a separate estate in the property; and although the character of the property is changed from personalty to realty, the same consequences attach to it, and it can not be alienated unless it be to reinvest for the separate use of the wife.

By the terms of the will of the testator a restriction is placed upon the sale and conveyance of the property, and it is not therefore embraced by the act approved January 16, 1868. (1 Session Acts, 5.)

Wherefore the judgment is reversed, and the cause is remanded with directions to set aside the contracts, and for further proceedings consistent herewith.