MARY ANN LISHEY *vs.* LEWIS C. LISHEY.

April Term, 1874.

WIFE'S SEPARATE ESTATE—INCOME RECEIVED BY HUSBAND.—If the husband and wife, living together, have for a long time so dealt with the separate income of the wife as to show they must have agreed that the husband, who was himself the trustee, should use it for family purposes, equity will not require him to account therefor until her consent is revoked.

SAME—HUSBAND TRUSTEE—CHANGE OF PROPERTY.—Where the husband is trustee for the wife, either expressly or by implication of law, a change in the form of the trust property made by him will not, without clear evidence of intention on the part of the wife to that effect, destroy the trust.

*John Trimble*, for complainant.

*E. H. East, N. S. Brown, Thos. H. Malone*, for defendant.

THE CHANCELLOR :—Bill filed April 4, 1873, for divorce from bed and board, and alimony, and also to require the defendant to account for the separate property of the complainant. The case has been heard on bill, answer, and the proof offered on behalf of complainant, the defendant having declined to introduce any evidence.

The parties intermarried in December, 1840, and have continued to live together until shortly before the filing of the bill, when the complainant voluntarily left the defendant and their common home. They have had no children. The proof shows that they are both industrious, economical, and good-tempered, esteemed by their neighbors, and in the enjoyment of a moderate competence.

As to that part of the bill which seeks an account of the complainant's separate estate, the answer admits, and the proof shows, that in the year 1846 the complainant received in this court the sum of $900, which was, by the decree, settled upon her, to her sole and separate use ; that afterwards, by an order in the same cause, on the 27th of November, 1848, this fund was loaned to the defendant, upon his executing a mortgage to secure the same, which was done ; that sometime in the year 1840 the complainant's father

made a deed of gift conveying to the complainant, to her sole and separate use, several slaves; that about the year 1850 defendant sold one of these slaves for $500, receiving the purchase money; that the other slaves were retained by the complainant and defendant until they were emancipated by the war.

Under these circumstances the liability of the defendant for the two sums of $900 and $500 has not been seriously controverted, and probably could not be. He is, as to the first of these sums, an express trustee by the decree, and mortgage executed in pursuance thereof, and nothing appears tending to show any change in the character of the holding. The law made him a trustee for his wife of the slaves conveyed to her separate use, and a change in the form of the trust property, without anything more, would not denude him of the trust. He would still be a trustee of the fund to the wife's separate use. The law in such cases requires clear evidence of an intent upon the part of the wife to change the character of his holding and destroy the trust. *Rich* v. *Cockell*, 9 Ves. 375; *Gore* v. *Knight*, 2 Vern. 535; *Hughes* v. *Wells*, 9 Hare, 765; *Darkin* v. *Darkin*, 17 Beav. 578. See, also, *Young* v. *Jones*, 9 Humph. 55; and *Bottoms* v. *Corley*, 5 Heisk. 10.

The proof shows that the husband has continued to hold the fund in question, without any demand on the part of the wife for the interest, until the filing of the bill, and that he has alone contributed to the support of the family. A wife having property settled for her separate use is entitled to deal with the income as she pleases. If, therefore, she insist upon her rights, the court will give her arrears of income from the time when she required the income to be paid to her. *Countess of Warwick* v. *Edwards*, 1 Eq. Ca. Abr. 140, pl. 7; *Ridout* v. *Lewis*, 1 Atk. 269. There are some cases which seem to imply that the wife will, in any event, be entitled to recover a year's income. *Aston* v. *Aston*, 1 Ves. 267; *Townsend* v. *Windham*, 2 Ves. 7; *Peacock* v. *Monk*, 2 Ves. 190; *Brodie* v. *Barry*, 2 V. & B.

39; *Parkes* v. *White*, 11 Ves. 225; *Burdon* v. *Burdon*, 2 Madd. 286, in note; *Thrupp* v. *Harman*, 3 M. & K. 513. Upon examination it will be found that, in each of the first three cases, the rule is stated by Lord Hardwicke, in the shape of a *dictum* touching arrears of pin-money; and, in the next two cases, there is a similar *dictum* of Lord Eldon, a *dictum* repeated by Sir William Grant in *Parker* v. *Brooke*, 9 Ves. 588. In *Burdon* v. *Burdon* there seems to have been an actual ruling, in accordance with these *dicta*, by Sir Thomas Sewell, master of the rolls, and the rule was acted upon, without objection, in *Thrupp* v. *Harman*. It will also be found that no reason is assigned for the rule in any of these cases. I am inclined to think that these *dicta* and rulings may be traced back to what was said by the commissioners of the great seal, in *Offley* v. *Offley*, Prec. Ch. 26, decided in 1691. The second doubt in that case was this : " On the marriage of Mrs. Offley with her husband there was a term created for raising £200 per annum for her pin-money, which money had been constantly paid to her by her husband's steward, except only the last year before his death, which was in arrear; and in the settlement was a covenant on the part of the husband for the payment of it; and the court were of opinion that this, being an arrear only for one year, and there being a covenant for the payment of it, should be such a debt as should be charged on the trust estate. *Secus*, if it had been in arrear for many years." This decision, it is obvious, was clearly right, the husband having never been allowed to retain and use the annual pin-money, and there being no ground for implying either an agreement or waiver by the wife in favor of the husband. And what Lord Hardwicke and Lord Eldon meant in their *dicta* was that, even where there was no acquiescence by the wife, she should not go back more than one year *in a claim for arrears of pin-money*. It was never intended to lay down such a rule in relation to the income of the wife's separate estate. For, although the master of the rolls is reported as saying, in

*Burdon* v. *Burdon*, " that there was no difference between pin-money which may come out of the husband's estate, and what may be settled for the separate use of the wife out of her own estate," which is true in some respects, yet there is a difference in the nature of the two interests, and in the reasons which underlie the adjudications. Pin-money is regarded in equity as payable *de anno in annum* for the paraphernalia of the wife, and during such time as the husband has provided her with clothes and other necessaries, she is barred of recovering any arrears. *Howard* v. *Digby*, 2 Cl. & Fin. 643. In the case of separate estate the inference in the husband's favor is derived from, and must be based upon, some evidence of consent on the part of the wife that her property should be appropriated by him. See note of Steuart Macnaghten to *Christmas* v. *Christmas*, Sel. Ca. Ch. 20. Where such consent exists there is not the least reason for going back one year. And, consequently, there is point in the reporter's question, in the note to 2 Madd. 286: " If the husband is permitted to receive the wife's separate estate, and he applies it in support of the family, why should he be accountable even *for one year?* "

The leading case on this branch of the subject is *Powell* v. *Hankey*, 2 P. W. 82. The wife, before her marriage, conveyed her real estate to trustees, to such uses as she, notwithstanding her coverture, should appoint, and assigned all her mortgages and bonds to her separate use; besides which she had £200 exchequer annuities, assigned by her intended husband to her trustees, in trust for herself, for her jointure. Here were separate estate, and jointure of the husband's property for maintenance or pin-money. After the marriage the wife constantly permitted the husband to receive the interest of all these securities and bonds, without making any complaint, either to the debtors that paid the money or to her trustees.

" With regard to any of the interest on the mortgages and securities received by the husband during the coverture," says the Lord Chancellor Macclesfield, " as it was

against common right that the wife should have a separate property from her husband (they being both, in law, but as one person), so all reasonable intendments and presumptions were to be admitted against the wife in the case ; and, forasmuch as she had, for ten years together, permitted the husband to receive this interest without making the least objection, either to the husband, or to the debtors who paid the money, or to her own trustees, it should therefore be intended that she consented to the husband's receipt of this interest ; that a contrary construction might have been a hardship upon the husband, who (probably) depended on the wife's permitting him to receive this as a gift ; and, on such presumption, might have lived in a more plentiful manner, the comfort whereof the wife must have shared in ; and if she, ten or twenty years afterwards, should be allowed to make her husband a debtor for all this money (which she might do by the same reason as now, after his death, to charge his executors), this might ruin the husband, or, in case of his death, prove equally prejudicial to his children."

"As to the case of separate maintenance," continues the report, " the court took notice that the husband's maintaining the wife barred the wife's claim in respect thereof ; so, if there should be a provision for the wife's separate use for clothes, if the husband finds those clothes, the wife's claim will be thereby barred ; that, in case of the wife's separate maintenance, if this be not demanded by her, she will be concluded, even where she has no other person to demand it of but her husband, which probably she might be afraid to do ; but that the principal case was not so strong ; in regard thereto the wife might have demanded it from her own trustees ; neither was it material whether the allowance or maintenance money was provided out of that estate which was originally the husband's, or (as in the principal case) out of what was the wife's own estate, for that in both cases, the wife's not having demanded it for several years together, should be construed a consent from her that the husband should receive it."

The practical good sense of these rulings met the approval! of Lord Chancellor King in *Thomas* v. *Bennet*, 2 P. W. 341, a case of pin-money, and in *Christmas* v. *Christmas*, Sel. Ca. Ch. 20, a case of separate estate. Lord Talbot followed the lead in *Fowler* v. *Fowler*, 3 P. W. 355, a case involving arrears of pin-money. In *Ridout* v. *Lewis*, 1 Atk. 269, Lord Hardwicke, while ordering an account under the circumstances, says : " I allow that it is a general rule, when a wife accepts a payment short of what she is entitled to, or lets the husband receive what she has a right to receive to her separate use, it implies a consent in the wife to submit to such a method, where the husband and wife have cohabited together for any time after."

The weight of authority, in accordance with these rulings, undoubtedly is that, if the husband and wife, living together, have for a long time so dealt with the separate income of the wife as to show that they must have agreed that it should come to the hands of the husband to be used by him (of course for their joint purposes), that would amount to evidence of a direction on her part that the separate income, which she otherwise would be entitled to, should be received by him. And this if the husband be himself the trustee. *Caton* v. *Rideout*, 1 Mac. & G. 599. The wife's consent to the husband's receipt of the income *de anno in annum* is presumed, and that such consent continues until revoked by something expressed or fairly implied. *Squire* v. *Dean*, 4 Bro. C. C. 326 ; *Smith* v. *Lord Camelford*, 2 Ves. jr. 716 ; *Milnes* v. *Busk*, 2 Ves. jr. 496 ; *Dalbiac* v. *Dalbiac*, 16 Ves. 126 ; *Bartlett* v. *Gillard*, 3 Russ. 155 ; *Buckeridge* v. *Glasse*, Cr. & Ph. 137 ; *Breesford* v. *Archbishop of Armagh*, 13 Sim. 643 ; *Payne* v. *Little*, 26 Beav. 1 ; *Gardner* v. *Gardner*, 1 Giff. 126 ; *Kelly* v. *Dawson*, 2 Mol. 87 ; *Methodist Episcopal Church* v. *Jacques*, 3 Johns. Ch. 79.

No claim of interest on the part of the wife is shown in this case to have been made until the filing of the bill. The facts bring the case precisely within the settled rule. The

defendant will, therefore, be charged with interest only from the filing of the bill, and with the principal sums. To this extent the equity of the bill is clear.

The complainant seeks, in addition, a divorce from bed and board.

[The opinion of the Chancellor on this part of the case, involving only questions of fact, is omitted.]