LYON vs. GREEN BAY & MINNESOTA RAILWAY COMPANY.

MARRIED WOMAN. *(1) Presumption as to consideration of deed to her. (2-5) For what injuries to her land she may sue alone, and for what injuries the husband must sue.*

1. Upon proof of a conveyance of land to the wife from a stranger, without any evidence as to the person by whom the consideration was paid, it must be held that it is her separate estate.

2. A married woman owning land as her separate estate may maintain an action, under our statutes, for an injury to the reversion, but not for an injury to the crops, done while she was out of the possession.

3. If the husband, who has received the crops or the income of his wife's land during a certain period, can hold the same against her, he, and not she, must bring an action for injuries done to the crops during that period.

4. A wife who permits her husband, without objection, for a long series of years, to receive and appropriate to his own use, or to their joint use, the income of her separate estate, cannot compel him to account to her

therefor, until such permission is revoked by her, and then only from the time of such revocation.

5. There being evidence in this case strongly tending to show, under the foregoing rule, that the plaintiff had so permitted her husband to receive and apply the crops and income from her land during the time in which the injuries herein complained of were done to such crops by defendant, that she had no right to an account from her husband for such crops, it was error to refuse an instruction to the jury, that plaintiff's possession of the premises was "not to be presumed from the mere fact that the patent was issued to her."

APPEAL from the Circuit Court for *Wood* County.

In 1872, the defendant company located and built its railroad through inclosed land to which the plaintiff held title by patent from the state issued in 1859, and has ever since operated such railroad without procuring a condemnation to its use of the land thus occupied. The fences, where they were crossed by the railroad, were thrown down by the company in 1872, and have since remained down; and the railroad has not been fenced. No cattle guards were constructed at the line of such fences, and the cattle of divers persons came upon plaintiff's said land through such openings in her fences, and injured and destroyed the grass growing thereon.

This action was brought to recover damages for the injuries so caused, in 1872, 1873 and 1874, to the grass and soil; and it is alleged in the complaint that plaintiff is the owner in fee simple and in possession of the *locus in quo*. The answer denies these allegations, and alleges that at the commencement of the action the plaintiff was, and still is, the wife of one Reuben C. Lyon, who is the owner of the *locus in quo* and the real party in interest in the action.

It was proved on the trial that the plaintiff intermarried with Reuben C. Lyon long before the patent for the land was issued to her; and no evidence was given or offered to show by whom the consideration for the patent was paid.

On the issue of possession, the plaintiff's husband testified as follows: " *Q.* In what capacity have you had control and

direction of these lands since the patent of *Esther J. Lyon?*
*Ans.* I have acted in the capacity of agent for her, and as
such agent have had charge of these lands since they were
purchased from the state, and have improved them by clear-
ing, fencing and seeding, and have taken care of the land gen-
erally." And further: " I am the husband of the plaintiff;
I was married to her in January, 1849; we have not lived on
these premises; my wife has never had anything to do with
the premises, nor any charge of them; they have been under
my charge continually. My damage in 1873 was about $800,
by reason of the destruction of the hay crop; the entire crop
was destroyed that year. I assumed that there would have
been a crop in 1873, because there was one in 1872; and that
is the only way I got at the estimate. My damage in 1874
was about the same." There appears to be no other testimony
bearing upon the question of possession.

The court refused to direct a verdict for the defendant, and
submitted to the jury the question whether the plaintiff was
in possession of the land. The jury found for the plaintiff,
and assessed her damages at $500; and also found specially
that she was the owner and in possession of the land described
in the complaint at the times therein mentioned. A new trial
was denied; and, from a judgment pursuant to the verdict,
defendant appealed.

For the appellant a brief was filed by *Norris & Chyno-
weth,* and the cause was argued orally by *T. B. Chynoweth.*
They contended, 1. That the plaintiff had not shown any
right to the possession of the land, and therefore could not
maintain this action. On this question their argument was
substantially the same as in *McVey* against this defendant,
*ante,* p. 532. They also argued that, except as required by stat-
ute, railroad companies are not obliged to fence between them-
selves and adjoining owners (*Stucke v. Railroad Co.,* 9 Wis.,
202; *Hurd v. Railroad Co.,* 25 Vt., 116); that sec. 30, ch. 119,
Laws of 1872, which requires them to fence, must be strictly

construed, because it changes the common-law rule, and also because it is penal (*Bellefontaine Railway Co. v. Suman*, 29 Ind., 40); and that it does not render the company liable for damages like those here demanded, but only for injuries done by its engines or agents to cattle, horses, or other domestic animals, occasioned by the failure to erect fences, etc. *Hurd v. Railroad Co.*, 25 Vt., 124; *Jackson v. Railroad Co.*, id., 150.

*George R. Gardner*, for the respondent, argued, 1. That plaintiff had shown possession and right of possession in herself. 2. That defendant, being a trespasser, cannot protect itself by setting up outstanding title in a third person (*Jackson v. Harder*, 4 Johns., 211, 212); and that plaintiff's permitting her husband to take charge of the land as her agent, would not prevent her from maintaining the action. *Boos v. Gomber*, 23 Wis., 284; *Feller v. Alden*, id., 301. 3. That defendant, even if it had not been a trespasser, would have been liable for the damages here, because it failed to fence its track as required. Sec. 30, ch. 119, Laws of 1872. The object of the statute is, first, to protect the traveling public; and secondly, to protect the land of the adjoining proprietors. *Dean v. Sullivan Railroad Co.*, 1 Am. R'y Cas., 214; *Corwin v. Railroad Co.*, 13 N. Y., 42, approved in *McCall v. Chamberlain*, 13 Wis., 637; 1 Redfield on R. W., 489, note 13, and 493, sec. 21. "Where the law imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose benefit it was imposed, for any damages sustained by reason of such neglect." 13 Wis., 639. The last clause of sec. 30, making a railroad company liable for cattle, etc., until fences are built, does not affect the general force of that section. The liability would be none the less certain if that clause were omitted. 13 Wis., 639. 4. That defendant was liable for the further reason that it entered upon plaintiff's land as a

trespasser, and forcibly threw down the fences, without attempting to acquire title.

LYON, J.    Upon the issue of title, this case, in all essential particulars, is like that of *McVey v. The G. B. & Minn. R'y Co.* [*ante*, p. 532], and is ruled by it.  On the authority of that case it must be held that, as the proofs stand, the *locus in quo* is the separate estate of the plaintiff.  Being her separate estate, she may, although out of possession, maintain an action for any injury to the reversion.

But injury to the grass growing thereon (for which the damages were mainly, if not wholly assessed) is not an injury to the reversion; and, in order to recover therefor, it is incumbent on the plaintiff to show that she was in possession of the land upon which the injured crops grew; in other words, that the crop belonged to her, and not to another.  When she introduced her patent from the state, and thus proved that the premises were her separate estate, in the absence of further testimony, the presumption of law would be that she had the possession and was entitled to the crops.  But there was further testimony concerning the possession and the right; and we are required to determine the effect of it.

. The proof is, that the plaintiff never had anything whatever to do with the premises, although she had owned them nearly sixteen years before this action was brought.  Her husband had the whole charge of them, and the evidence tends strongly to prove that he received the proceeds of the land and crops as his own; for he constantly speaks of the damages for the alleged injury to the crops as "my damage." There is no evidence that the plaintiff ever gave a direction concerning the land, or ever received to her separate use, or claimed, any of the income of it, or ever asserted any possessory rights in it; but all reasonable inferences from the testimony are directly the reverse.  True, the husband says he

acted as the agent of his wife; but he does not say that she ever appointed him her agent, or requested him to act for her; and there is much reason to believe that she never did so. It is apparent that the husband's testimony as to the agency (no doubt honestly given) was based upon what he thought was the legal relation he sustained to his wife in respect to her land, rather than upon any actual arrangement between them.

Unless the plaintiff can compel her husband to account to her for the income of the land received by him during the years in question (1872–4), she cannot recover in this action. This is the true test of her right. If the husband, who has received the crops or the income of the land, can hold the same as against the plaintiff, it is clear that in an action for injuries to such crops, the husband, and not the wife, must be the plaintiff.

We understand it to be well settled, that a wife who permits her husband, without objection, for a long series of years, to receive and appropriate to his own use, or to their joint use, the income of her separate estate, cannot compel him to account to her therefor until such permission is revoked by her, and then only from the time of such revocation. A different rule might give the opportunity to mislead persons dealing with the husband, and thus open a door to fraud.

In a well considered opinion by Chancellor COOPER, in the late case of *Lishey v. Lishey*, in the chancery court of Tennessee, 2 Tenn. Ch. R., 5, the rule is so well stated that we cannot do better than to extract at some length from the opinion. After quoting from Lord MACCLESFIELD in *Powell v. Hankey*, 2 P. W., 82, and from Lord HARDWICKE in *Ridout v. Lewis*, 1 Atk., 269, the chancellor says: "The weight of authority, in accordance with these rulings, undoubtedly is, that, if the husband and wife, living together, have for a long time so dealt with the separate income of the wife as to show that they must have agreed that it should come to the

hands of the husband to be used by him (of course for their joint purposes), that would amount to evidence of a direction on her part that the separate income, which she otherwise would be entitled to, should be received by him. And this, if the husband be himself trustee. *Caton v. Rideout*, 1 Mac. & G., 599. The wife's consent to the husband's receipt of the income *de anno in annum* is presumed, and that such consent continues until revoked by something expressed or fairly implied. *Squire v. Dean*, 4 Bro. C. C., 326; *Smith v. Lord Camelford*, 2 Ves. Jr., 716; *Milnes v. Busk*, id., 496; *Dalbiac v. Dalbiac*, 16 id., 126; *Bartlett v. Gillard*, 3 Russ., 155; *Buckeridge v. Glasee*, Cr. & Ph., 137; *Beresford v. Archbishop of Armagh*, 13 Sim., 643; *Payne v. Little*, 26 Beav., 1; *Gardner v. Gardner*, 1 Giff., 126; *Kelly v. Dawson*, 2 Mol., 87; *Methodist Episcopal Church v. Jacques*, 3 Johns. Ch., 79." The quotation from Lord HARDWICKE is as follows: "I allow that it is a general rule, where a wife accepts a payment, short of what she is entitled to, or lets the husband receive what she has a right to receive to her separate use, it implies a consent in the wife to submit to such a method, where the husband and wife have cohabited together for any time after." Many of the cases cited by Chancellor COOPER have been examined, and it is believed they sustain the doctrine laid down by him.

As already observed, the undisputed evidence in the present case, and the reasonable inferences therefrom, tend strongly to the conclusion that the plaintiff, without objection, permitted her husband, for many years, to control the land and to receive and appropriate as his own the income of it. Within the rule above stated, if she did so, she foreclosed her right to an account for the crops grown upon it, and, as a necessary result, she also foreclosed her right to maintain an action for injuries to such crops.

We conclude, therefore, that the case is within the rule, and that, as the evidence now stands, the action for injuries to the

crops belongs to the husband and not to the wife. Another trial may, however, develop a different state of facts.

There are several exceptions in the record which present this point for determination. Among these is an exception to the refusal of the court to instruct the jury that " possession of the premises is not to be presumed to be in the plaintiff from the mere fact that the patent was issued to her." There are many other exceptions in the record bearing upon this and other points; but it is unnecessary to notice them.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.