### GHORMLEY v. YOUNG ET UX.

#### No. 7468.

EVIDENCE.—*Fraudulent Representations.—Statements by Party, to Third Person, after Consummation of Contract.*—In an action for damages for misrepresentations by the defendant, to the plaintiff, of the value and quality of certain lands exchanged by the defendant, with the plaintiff, for certain other lands, wherein the plaintiff had testified that such misrepresentations had been made to him by the defendant, the plaintiff introduced another witness who, over the defendant's objection, testified that the defendant had made like misrepresentations to the witness, as to the value of such lands, at a time when the several deeds had been signed but not delivered; that the title to the lands to be conveyed by the plaintiff was then yet in the witness' father; and that the plaintiff then owed witness, who then and there, before such misrepresentations were made, had informed the defendant that he would procure his father to decline to perfect the title, unless payment of his debt was secured.

*Held*, that the evidence was competent, both as a part of the *res gestæ*, and as corroborating the plaintiff's evidence.

SUPREME COURT.—*Weight of Evidence.*—Where there is evidence tending to support the verdict or finding, it will not be disturbed, on its weight, by the Supreme Court.

From the Montgomery Circuit Court.

*T. E. Ballard, D. E. Williamson* and *A. Daggy*, for appellant.

*J. M. Thompson* and *W. H. Thompson*, for appellees.

NIBLACK, C. J.—This was a suit by John T. Young and Rachel Young, his wife, against Francis M. Ghormley, arising out of an exchange of real estate.

The complaint was in two paragraphs.

The first alleged an exchange of real estate in Montgomery county, belonging to the plaintiffs, for lands in Wisconsin, the property of the defendant, charged misrepresentation as to the character and value of the Wisconsin lands by the defendant, and asked a rescission of the contract.

The second alleged fraudulent misrepresentations by the defendant, as an inducement to make the exchange, and that the Wisconsin lands were of no value, and demanded damages.

A jury found for the plaintiffs upon the second paragraph of the complaint, and assessed their damages at two hundred and fifty dollars. After overruling the motion for a new trial, the court rendered judgment upon the verdict.

John T. Young, one of the plaintiffs, testified, amongst other things, that he and the defendant commenced talking about the exchange of lands, about the 25th day of May, 1877; that they closed their trade on the 2d day of June following, and finished it up on Monday evening, the 6th day of the latter month, by the exchange of deeds; that the real estate in Montgomery county consisted of a house and lot, and that there were one hundred and twenty acres of the Wisconsin lands, consisting of two tracts, one an eighty and the other a forty acre tract; that he had never seen the Wisconsin lands at the time of the exchange, and relied on the defendant's statements and representations concerning them; that the defendant first told him that those lands were nice level lands, well set in blue-grass, and densely covered with good timber, such as sugar-tree and black walnut; that the eighty-acre tract

had fifty acres of land level and good for agricultural purposes, and that on the forty-acre tract there were thirty acres in one place level and suitable for a wheatfield; that some of these lands were a little rough, but would be good for pasture.

Lafayette Young testified, on behalf of the plaintiffs, that about May, 1877, the plaintiff John T. Young was indebted to him in the sum of two hundred dollars; that he heard about that time, that the parties were on a trade; that he asked the plaintiff John T. Young to give him a mortgage on the Wisconsin lands to secure what he owed him; that he had two conversations with the defendant about the Wisconsin lands, the last of which was on the 6th day of June, 1877; that John T. Young had obtained the house and lot from Albert D. Young, the father of witness, but had not at that time received a deed for the same; that, in such last conversation, he, witness, notified the defendant that if John T. Young did not secure him in what he, Young, owed him, Albert D. Young would hold on to the house and lot; that defendant expressed a desire to have the matter closed up, and said that if the plaintiff John T. Young would give witness a mortgage on forty acres of the Wisconsin lands, that would be ample security for two hundred dollars; that the defendant then further said, that he was giving John T. Young a good trade, and that he, witness, ought to throw off some of his claim; that the lands were good; that there were thirty acres in one tract of forty acres that would make a splendid wheatfield; that there was upon the lands plenty of bass-wood and sugar-tree, and that there were ninety acres level and fit for cultivation; that deeds had at the time of this last conversation been executed but not delivered.

The defendant objected to the conversation with him, thus testified to by the witness, Lafayette Young, going to the jury, upon the grounds:

First. That the trade between the parties to the suit had then been completed;

Second. That, Lafayette Young not being a party to the suit, such conversation could have had nothing to do with influencing the plaintiffs to consent to the trade out of which the controversy had arisen.

But the court overruled the objection, and permitted the witness to testify as above stated.

The defendant, the appellant here, contends that the court erred in so permitting the witness, Lafayette Young, to testify over his objection, and that the verdict was not sustained by sufficient evidence.

We see no objection to the admission of the evidence complained of. The witness, Lafayette Young, showed himself to have been interested in the property and business of the plaintiff John T. Young, and in a position which might have enabled him to have prevented the consummation of the land trade, if its terms had not been satisfactory to him, the deeds at that time not having been delivered.

What was said, therefore, by the appellant, at the time, for the purpose of influencing Lafayette Young, and preventing him from interposing any objection to the exchange of lands already agreed to by the appellee, appears to us to have been competent, not only as a part of the *res gestæ,* but also in corroboration of the testimony of the plaintiff John T. Young, the inference clearly being that the conversation objected to had some influence in bringing about the mutual delivery of the deeds.

We are, also, unable to disturb the verdict, upon the evidence.

John T. Young further testified, that the house and lot, at the time of the exchange, were worth four hundred dollars; that the Wisconsin lands did not contain an acre of level ground; that they were utterly worthless, and could not be disposed of by him at any price.

There was quite an array of evidence strongly in conflict with many of the most material portions of the evidence submitted by the appellees, and especially with that portion which related ,to the character and value of the Wisconsin lands, but there was evidence tending to fully sustain the verdict.

Whether the verdict was sustained by the apparent weight of the evidence, is a question we are not required to decide, and concerning which no opinion is expressed.

The judgment is affirmed, with costs.