The Brookville National Bank v. Kimble et al.

———◆◆◆———

### No. 8699.

### THE BROOKVILLE NATIONAL BANK v. KIMBLE ET AL.

| 76 | 195 |
|---|---|
| 126 | 384 |
| 76 | 195 |
| 135 | 646 |
| 136 | 323 |
| 76 | 195 |
| 137 | 179 |
| 76 | 195 |
| 147 | 422 |
| 76 | 195 |
| 149 | 450 |

HUSBAND AND WIFE.—*Conveyance.—Creditors of Husband.—Fraud.—Evidence.*—On trial of an action, by a judgment creditor of a husband, to set aside a conveyance by him to his wife as fraudulent against creditors, evidence that, by receiving her separate property for many years and appropriating it to his uses, he became her debtor in a sum equal to the value of the land; that, although he conveyed it to her for the purpose of placing it beyond the reach of plaintiff and his other creditors, she had no knowledge of such purpose, and did not participate in it, and did not know of his indebtedness to the plaintiff, sustains a finding in her favor.

SAME.—*Legacy.—Common Law.*—Where, in 1841, a husband received a legacy left to his wife, not in right of his marriage, but as the money of his wife, and upon an agreement to hold it for her, it became a valid claim in her favor, which it was his right and duty to discharge.

SAME.—*Wife's Separate Property.—Will.*—Where a testator died in 1849, leaving a bequest to his daughter, "and to no other person," and providing that "her receipt for the same shall be conclusive evidence of its payment," such legacy became the separate property of the daughter, beyond her husband's control; and his appropriation of it to his own use raises an implied promise to repay it.

SAME.—*Consideration.—Conflicting Evidence.—Supreme Court.*—The trial court having found that the consideration in a conveyance from a husband to his wife was adequate, the Supreme Court can not, upon conflicting evidence, say it is not.

SAME.—*Innocent Purchaser.*—In such case, the wife, being ignorant of the existence of her husband's indebtedness to plaintiffs, must be regarded as an innocent purchaser for a valuable consideration.

SAME.—*Wife as Preferred Creditor.*—If a wife be a creditor of her husband, he may prefer her to other creditors, by giving her money or property, at a fair price, in discharge and payment of her claim.

SAME.—*Statute of Limitations.*—*Estoppel.*—A husband may pay an honest debt to his wife, however stale and ancient it may appear to other creditors. He is not compelled, by law, to resort to the statute of limitations as a defence, nor can others insist upon it for him, nor is she estopped to receive payment of the debt.

SAME.—*Direct Conveyance.*—A direct conveyance from a husband to his wife, in discharge of an honest and ascertained debt from him to her for her money, appropriated by him to his own uses, will be sustained and upheld.

From the Franklin Circuit Court.

*W. H. Jones,* —— *McMahan, J. F. McKee* and —— *McKee,* for appellant.

*T. H. Smith* and *W. H. Bracken,* for appellees.

MORRIS, C.—This action was brought to set aside a conveyance of 450 acres of land, situate in Franklin county, Indiana, made by George W. Kimble, to his wife, Mary A. Kimble, on the ground that it was fraudulent as against the creditors of the grantor.

The complaint consists of three paragraphs.

It is alleged in each, that George W. Kimble, Wilbur F. Hazzard, and Isaac Murray were indebted to the appellant in the sum of $1,000, by note dated January 8th, 1877; that the appellant instituted suit in the Franklin Circuit Court on this note, and, on the 28th day of April, 1877, recovered a judgment against said Kimble, Hazzard and Murray, for $1,079.60, the amount of principal, interest and attorney fees due on the note and the costs of the suit.

That, after the commencement of this suit, but before the rendition of said judgment, George W. Kimble, being the owner of 450 acres of land, particularly described in the complaint, and situate in said Franklin county, conveyed it to the appellee Mary A. Kimble, his wife. It is stated in the first paragraph, that said conveyance was without consideration. In the second, that it was made by the grantor for the purpose of defrauding the appellant and the grantor's other creditors, and that the grantee took the deed with

knowledge of such fraud. It is alleged in the first and second paragraphs of the complaint, that George W. Kim-. ble, aside from the land so conveyed to the said Mary A. Kimble, was, at the date of said conveyance, insolvent, and that he had no property subject to execution. The third paragraph states all the facts contained in the first and second, and avers, in addition thereto, that, at the time said deed was made by said Kimble to his wife, Hazzard and Murray were both insolvent.

The appellees answered the complaint by a denial.

The cause was submitted to the court for trial. Finding and judgment for the appellees. The appellant moved the court for a new trial. The motion was overruled and it excepted. The evidence is properly in the record.

The error assigned is, the overruling of the motion for a new trial.

Upon the trial, the appellant proved the indebtedness of Hazzard, Murray and George W. Kimble to it by note, as alleged in the complaint; the recovery of a judgment in its favor and against said Hazzard, Murray and Kimble, at the time, and for the amount stated in the complaint. It also proved the insolvency of Murray and Hazzard; that George W. Kimble had been the owner of the 450 acres of land described in the complaint from the year 1855; that the consideration mentioned in the deed conveying to him the land, was $4,800; that George W. Kimble, on the 19th day of April, 1877, conveyed the land to his wife Mary A. Kimble; that the consideration stated in his deed to her was $11,000, and that the land conveyed was all his real estate. It also proved that an execution had been duly issued on said judgment and returned wholly unsatisfied. George W. Kimble testified on behalf of the appellant, substantially as follows: That the consideration mentioned in his deed to his wife was intended to be the amount which he had received from her—between $5,000 and $7,000, and the interest

thereon; that at the time he made the deed, no money was; paid; that he had received the money before; that the first money he received from her was $500, paid him by her father; that it came from England, for her, from her aunt's. estate; that he spent it in erecting a dam in 1841 or 1842; that there was always an agreement between him and his. wife that he was to make it good to her. Some of the money he got from the executors of her father's estate.. Christopher Whitehead was the father of his wife. Could not tell when he received the next amount, but received altogether from $5,000 to $7,000. That he received some times $180 per year; receipted for what he received. He put $500 of the money he got from his wife in a donation to a bridge; put part in a mill, paid some to Holland when he traded for the land in controversy; paid him $600 or $800 to boot; that his wife's money helped to carry on all his business; did not know how much of her money was. put into the bridge; did not keep it separate; could not tell. how much of her money was put into the mill; "Mr. Smith. made the deed to my wife; he was the only one present; first informed her that I had made the deed when I gave it to her; I made the deed because I had promised her to make her safe; we had talked it over often about her money; I made it to her because I had, fool-like, gone security, and they were about to rob her; I refer to the Hazzard and Murray note; I had, fool-like, put my name on the back of a note for them; the note on which I put my name I was sued on with Hazzard and Murray." He testified that it was the note on which the appellant sued, as stated in its. complaint. He also testified that he had no property at the time he made the deed, except the land conveyed to his wife; that he has not since had any. He testifies that, from 1854 to 1864, he received of his wife's money, from the executors of her father's will, in annual payments, about $1,722.86, and gave to the executor receipts. Christopher

Whitehead, his wife's father, died in 1848 or 1849. The money belonged to her. She began to receive money soon after her father's death. He said he considered the money his when he got it, but that he owed it to his wife. He also stated that he had lived on the land since 1854, with his family.

The appellant introduced the will of Christopher Whitehead, the father of Mrs. Kimble, from which it appeared that he devised to her the interest on one-fourth of the residue of his estate during her life, and the interest on a certain note for $425. The language of the will is:

"Said legacy shall be paid annually to my daughter, Mary Ann Kimble, and to no other person, during her natural life, and her receipt for the same shall be conclusive evidence of the payment of said interest."

The appellant also proved by some five witnesses that the value of the land conveyed by George W. Kimble to his wife was from $15 to $20 per acre. It was proved that George W. Kimble and Mary Ann Kimble were married in the fall of 1841. It also appeared that Mary Ann Kimble had received from her father's estate, between the years 1850 and 1854, something over six hundred dollars.

The appellee proved by some six witnesses that the land conveyed by George W. to Mary Ann Kimble was worth from seven to ten dollars per acre. They also proved that from 1850 to 1854, inclusive, the appellee Mary A. Kimble received from her father's estate $709, and that from 1868 to 1877, inclusive, she received $1,796.40. Mary A. Kimble testified that she let her husband have most of the money drawn by her from her father's estate, none of which had been repaid to her. She further says that the money which she drew from her father's estate, and did not let her husband have, was spent in the family. She could not remember how much she laid out herself, nor how much she let her husband have. She did not know at the time she received the deed that

George W. Kimble owed the appellant, nor that he made it to hinder, delay or defraud his creditors.

George C. Kimble testified that he was the son of George W. Kimble; that he drew money from the estate of Christopher Whitehead for the years 1865, 1866 and 1867, in all $523.77; that he applied the money in paying taxes on the land in controversy.

The foregoing is the evidence, in substance, given in the case. Upon the facts thus stated, the following questions may be considered:

1. Was George W. Kimble, at the time he made the conveyance of the land in controversy to his wife, Mary Ann Kimble, indebted to her, and, if so, in what sum?

2. If indebted to her, was the amount of the indebtedness a fair consideration for the land conveyed?

3. Was the conveyance made, not with a view to pay the indebtedness of George W. Kimble, but for the purpose of placing the land beyond the reach of the appellant and his other creditors?

4. If the purpose of the grantor was to defraud the appellant, did the grantee have any knowledge of such purpose, or participate in it?

1st. George W. Kimble testifies that he received the legacy of $500, left to his wife by her aunt, not in virtue of his marital rights, but upon an agreement to hold it for her, and repay it to her. Although he might have claimed this legacy by virtue of his marriage, yet the law did not give it to him beyond his power to reject it, and if he received it not in right of his marriage, but as the money of his wife, and upon an agreement to hold it for her, it became, in his hands, a valid claim in her favor, which it was his right and duty to discharge.

The will of Christopher Whitehead took effect at the time of his death, in 1849. Were the bequests to Mary Ann Kimble, contained in his will, so given to her as to be beyond

the control of her husband, George W. Kimble? The language of the bequest is:

"The interest of said legacy shall be paid annually to my daughter, Mary A. Kimble, and *to no other person*, during her natural life, and her receipt for the same shall be conclusive evidence of its payment."

This language gave the legacy to Mrs. Kimble beyond the power of her husband to claim or control it. Redfield says that where it is provided in the bequest, that the receipt of the married woman shall be sufficient to discharge the executor, the legacy will be the separate property of the wife. 2 Redfield Wills, p. 196.

In the case of *Prichard* v. *Ames*, Turn. & Russ. 222, the language was, "for her own use and at her own disposal." GRAHAM, B., said: "The necessary effect of these words is to give this legacy to the separate use of the plaintiff." Any form of expression which fairly indicates the desire of the testator that the legatee, being a married woman, should hold exclusive control of it, will be upheld in courts of equity. 2 Story Eq. Juris., secs. 1381, 1382; *Hathaway* v. *Yeaman*, 8 Bush, 391; *Lumb* v. *Milnes*, 5 Ves. 517.

From 1850 until 1877, George W. Kimble received annually, of the money given to his wife for her separate use, considerable sums, which he used in his business. The money being his wife's, his appropriation of it to his own use raised an implied promise to repay it.

We think he is chargeable with the $500 received from the estate of his wife, upon his agreement to hold it for his wife; also, with the sums received by him from the executors of Christopher Whitehead, amounting to $1,722.86. We also think that he should be charged with the $523.77, collected from the money due Mrs. Kimble by his son, George C. Kimble, and used in paying his taxes. Though this may have been done by the son without any direction from the father, yet, as it was applied and expended for his

benefit, the law does not forbid its payment. The money was probably obtained by his direction and used with his consent; but, however this may be, it was applied to his benefit without objection on his part, and this created a moral obligation to account for it, which was sufficient to justify its repayment. *Goff* v. *Rogers*, 71 Ind. 459.

We also think, that upon the testimony of Mrs. Kimble, George W. Kimble must be charged with one-half, at least, of the money received by her from the executors of her father's estate, which would be $1,213. These several sums aggregate, without interest, $3,934.

2d. Was this sum a fair and adequate consideration for the land conveyed by George W. Kimble to his wife?

The testimony as to the value of the land is conflicting. One witness puts its value at $7, three at $9, two at $10, one at $15, one at $17, and two at $18 per acre. Had the court found the value of the land per acre at any of these figures, this court could not disturb the finding, because there would be some testimony tending to sustain it. We can not say that the court did not so find. *Ghormley* v. *Young*, 71 Ind. 62; *Nave* v. *Tucker*, 70 Ind. 15; *Barclay* v. *Miers*, 70 Ind. 346; *Staub* v. *Ryan*, 72 Ind. 16; *The Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73. The quantity of land was 450 acres. At $7 per acre, it would be worth $3,150; at $9 per acre, it would be worth $4,050. The court having found the consideration to be adequate, we can not say, upon the conflicting evidence, that it is not.

3d. We think the testimony of George W. Kimble shows that the controlling motive which induced him to make the deed to his wife, was, to place the land beyond the reach of the appellant.

4th. But it is quite clear, upon the evidence, that Mrs. Kimble knew nothing of this purpose on the part of her husband. She did not even know that he was indebted to the appellant at all, or that a suit had been commenced against

him. She did not participate in such purpose of her husband, and must be regarded as an innocent purchaser for a valuable consideration.

It is insisted in argument, by the appellants, that, by long delay, Mrs. Kimble is estopped to insist upon her claim as against the appellant; that, by this delay, she has allowed her husband to hold himself out to the world as the owner of the land, and, as such, to contract debts and obtain credit; that much of her claim is stale, and surrounded by circumstances tending to show that it was a gift to the husband, and that it was not regarded as an existing indebtness. It is true that the land did, in fact, belong to the husband, and that the credit given to him by the appellant was based upon such ownership. But may it not be equally true, that, upon this actual ownership and his apparent freedom from embarrassment, George W. Kimble obtained, from year to year, his wife's money, and the long indulgence complained of? She only claimed to be the creditor of her husband. He had a right to prefer her to other creditors, by giving her money or property, at a fair price, in discharge and payment of her claim upon him. Had George W. Kimble preferred and paid the appellant, leaving his wife and other creditors unprovided for, no one would have questioned his right to do so; and, because he might have legally preferred the appellant, he might prefer his wife. The mere fact that a claim is old is no reason why it should not be paid. The law allows a man to be honest and to pay an honest debt, however stale and ancient it may be. He may interpose the statute of limitations, but he may waive it also. The law does not compel him to resort to this defence, nor can others insist upon it for him.

We are referred to the case of *Moyer* v. *Adams, Assignee,* recently decided in the Circuit Court of the United States, by Judge DRUMMOND. We think the case is not in

point. The question seems to have been as to whether or not the husband held the land as the trustee of the wife. She had advanced a part of the purchase-money, but the court held, that, as a portion of the husband's means had been invested in the same land, he could not be regarded as her trustee, and as holding the land in trust for her. The court was unwilling to divide the land and hold a part to be trust property. There is nothing said as to whether the wife had a debt against the husband, which she could enforce, or which he might honestly discharge. If the decision is to be understood as holding that a husband can not convey property to his wife in discharge of an honest and ascertained debt, due from him to her, it is in conflict with the decisions of this court. *Pinnell* v. *Stringer*, 59 Ind. 555; *Kyger* v. *The F. Hull Skirt Co.*, 34 Ind. 249; *Schœffer* v. *Fithian*, 17 Ind. 463; *Eagan* v. *Downing*, 55 Ind. 65; *Sims* v. *Rickets*, 35 Ind. 181.

After referring to many cases, the court, in the case last cited, on page 192, says: "A direct conveyance from a husband to his wife will be sustained and upheld in equity, in either of the following cases, namely: 1. Where the consideration of the transfer is a separate interest of the wife, yielded up by her for her husband's benefit or that of their family, or which has been appropriated by him to his uses." That a deed by a husband to his wife is good, see *Thompson* v. *Mills*, 39 Ind. 528; *Brookbank* v. *Kennard*, 41 Ind. 339. The judgment below should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of appellant.