Filed Jan. 31, 1884.

———————◆———————

No. 10,943.

BRISTOR, ADMINISTRATRIX, *v.* BRISTOR.

HUSBAND AND WIFE.—*Decedents' Estates.*—*Income from Wife's Land.*—*Husband's Liability to Wife.*—*Case Limited.*—Where a husband receives and applies the income of the wife's lands to the common use of the family, with her consent and under circumstances indicating no purpose by either that he shall be charged therewith, she can not, after his death, maintain a claim therefor against his estate. *Hileman* v. *Hileman*, 85 Ind 1, limited.

From the Marion Circuit Court.

Bristor, Administratrix, *v.* Bristor.

*L. Ritter, E. F. Ritter* and *B. W. Ritter,* for appellant.
*H. C. Allen* and *H. J. Milligan,* for appellee.

ELLIOTT, J.—Esther A. Bristor, the appellee, inherited: from her father in common with her brother, John Kellum,. several parcels of real property; in December, 1846, an agreement of partition was made allotting to her a lot in Indianapolis; in execution of this agreement a deed was executed by Kellum, but instead of making it to the appellee it was made to herself and her husband; the sole reason for so writing the deed was the statement of the justice by whom it was drawn that this was the only legal form in which it could be made. The husband throughout his life spoke of the property as belonging to his wife, and in contracts made by him so treated it; he erected buildings upon the lot, and for a long series of years collected and appropriated the rents to his own use; he and his wife lived together during all of this time, and during part of it resided in a house built with part of the proceeds of the rent collected by the decedent.. To recover the rents so collected the appellee filed the claim: upon which rests the judgment from which this appeal is prosecuted.

We concur with counsel for the appellee that the evidence warranted a finding that the lot was the wife's separate property. It is fully shown that the entire consideration moved from her; that the deed was not intended to vest any interest in the husband, and that he always recognized the property as that of his wife. As against him this was sufficient to establish ownership in the wife. The controlling element is that the whole consideration was paid by her, and the deed was executed prior to the statute of 1852. *Lochenour* v. *Lochenour,* 61 Ind. 595; *Watkins* v. *Jones,* 28 Ind. 12.

The question whether the evidence warranted a finding for the rents collected since the statute of 1852 went into effect, is not free from difficulty. The statute expressly secures to the wife the rents accruing from her separate property, and

the adjudged cases have given the statute full force in the wife's favor, by declaring, in emphatic terms, that the husband has no right to the rents issuing from his wife's land. *Wilkins* v. *Miller*, 9 Ind. 100; *Scott* v. *Scott*, 13 Ind. 225; *Woodward* v. *Lindley*, 43 Ind. 333; *Stout* v. *Perry*, 70 Ind. 501. If the evidence showed that the wife had asserted a direct claim to the rents, and that the husband had retained them notwithstanding this claim, we should have no difficulty in sustaining the finding of the trial court, but no such claim was made, nor is there any evidence from which it can legitimately be inferred that any such claim was ever asserted.

Whatever may be the rule under the recent statutes enlarging the rights and powers of married women, it is quite clear that, under the law as it formerly existed, husband and wife could not contract with each other, but this rule did not operate to prevent a charge arising in favor of the wife, and this was so even in cases where there was no tort. It is evident that where there is no tort no charge can be created against the husband in favor of the wife unless there is something in the nature of an agreement, express or implied, upon which to base the liability. No one can be charged as a trustee where there is no liability growing out of a contract or duty, or springing from a tort.

The rule which applies in ordinary dealings between parties not sustaining marital relations upon the subject of implied contracts can not, it is obvious, apply in its full force where the relation of husband and wife exists. The relation of the parties has always been regarded as exerting an important influence upon the question. *Andrews* v. *Huckabee*, 30 Ala. 143; *Hill* v. *Chambers*, 30 Mich. 422.

If the facts show that the husband received the rent from his wife's separate estate, intending to be charged, or received and used it over her objection, then, no doubt, he would be liable, no matter to what purposes of his own he may have applied them; if, on the other hand, the circumstances show that the wife did not intend to charge the husband, and that

he did not intend to account, then the courts can not, after his death, charge his estate. In the present case there is no pretence of an express agreement of the husband, and the only question is whether the facts are such as impliedly create a liability.

If the husband had undertaken to pay the wife the rent received, then the case of *Brookville Nat'l Bank* v. *Kimble,* 76 Ind. 195, would be decisively in favor of the appellee, but there was here neither an express precedent agreement, nor a subsequent acknowledgment of indebtedness. A husband may doubtless convey land to his wife in payment of an obligation imposed by the receipt of the wife's money, and this he may do although the obligation is merely an equitable and not a legally enforceable one. *Goff* v. *Rogers,* 71 Ind. 459; *Brookville Nat'l Bank* v. *Kimble, supra.* This rule can not govern a case where the contest is between husband and wife and the point of dispute the liability of the husband; for the rule only applies, as the cases show, where the husband concedes his obligation, and not where he denies it. The question here is not what the husband may voluntarily do, but what can the wife compel him to do? Our inquiry then is, can the wife force the husband's representatives to account for the rent received through this long series of years?

In *Dayton* v. *Fisher,* 34 Ind. 356, it was held that where the husband invested the wife's money in land without her knowledge, a trust resulted in her favor; but this ruling does not aid us in the present investigation where the controlling inquiry is altogether different. Nor does the case of *Garner* v. *Graves,* 54 Ind. 188, furnish us important assistance, for there the material ruling was that notes given for the purchase-money of the wife's land were not assets of the estate of the deceased husband, although the notes were written payable to him. A case which does declare a principle strongly supporting appellee's theory is *Hileman* v. *Hileman,* 85 Ind. 1. It is there held that " The presumption under the statute is that the money or property of a wife acquired by

Bristor, Administratrix, *v.* Bristor.

descent, devise or gift, remains her separate property, and that, if the husband takes the possession and management thereof, he does it as trustee for her." This is a very broad statement, and it may be doubted whether it ought not to be limited in some degree at least, for it may well be questioned whether the mere fact of entering upon the duty of managing the wife's property constitutes the husband a trustee in all cases. So much depends upon the facts of each particular case that it is difficult, if not impossible, to lay down any general rule. It is also true of the case cited, that it further decides, impliedly at least, that where the property is shown to be that of the wife, the burden of showing that the rents were received by the husband as a gift from the wife is cast upon the former. This may be true as an abstract proposition applicable to cases where there is no evidence except such as tended to prove that the money was that of the wife, but it can not be true of all cases.

The instruction approved in *Hileman* v. *Hileman, supra,* must be considered with reference to the facts of that particular case, as must also the language of the opinion. It is a familiar rule that the words of the court must be understood with reference to the questions then before it, and, under this rule, we think it clear that the approval of the instruction can not be construed as extending beyond a defence against the objections then urged against it. It was not held, nor intended to be held, that the instruction might not be subject to other objections than those suggested, for no others were considered than those argued by counsel and passed upon by the court.

It is evident from the whole tenor of the opinion in *Hileman* v. *Hileman, supra,* that the attention of the court was chiefly occupied with the question whether a husband could be deemed a trustee of the wife, and that incidental questions bound up in the instruction were not considered or decided. It is no doubt true that the husband may be the trustee of the wife, but whether he can be treated as such depends upon

the facts of the particular case. There may be cases where the husband manages the property of the wife, and yet is not chargeable as a trustee. There are cases where the presumption created by the evidence is utterly incompatible with the theory that a debt or charge exists against the husband. Unless the facts in the particular case are such as create a charge against him, no action can be maintained by the wife.

It is true that our statute gives the wife a right to the rents issuing from her separate real estate, and in this respect changes the common law rule, but this does not render inapplicable those cases which hold that where the husband uses the wife's money for the common benefit of the family, no charge accrues against him. This we say because the separate property of the wife duly secured to her was as much her individual and separate property at common law as is the rent issuing from her land under the provisions of our statute. The husband could no more acquire her separate property under common law rules than he can that which the statute of this State gives her in her own absolute right. The separate property of the wife was preserved to her before the adoption of the statute, but the statute extended her rights and made that separate which before was not so; it did not, however, change the rule as to cases in which the husband could or could not use her separate property without incurring liability to her. The change which the statute makes is to add to her separate rights of property, and not to change the rule which governed where the husband used the separate property of the wife.

It has long been the rule of the courts that where the husband, with the knowledge and consent of the wife, applied the income arising from her separate estate to the benefit of the family, no charge could accrue against him, in the absence of evidence of an understanding or agreement on his part to repay her. *Powell* v. *Hankey*, 2 P. Wms. 82; *Ridout* v. *Lewis*, 1 A. & K. 269; *Lyon* v. *Green Bay, etc., R. W. Co.*,

42 Wis. 548; *Courtright* v. *Courtright*, 53 Iowa, 57; *Lishey* v. *Lishey*, 2 Tenn. Ch. 5; *Jacobs* v. *Heisler*, 113 Mass. 157. We think this principle applies to a case like this, where the husband had in the beginning a right to collect and appropriate the rents, where he was named in the deed as one of the grantees, where he used the money, as is clearly inferable from the evidence, in providing a dwelling-house for the wife and family, and in the maintenance of the family. Prior to the statute of 1852 the income of this property was the husband's, and his continuing to collect and use it subsequent to that time, with his wife's consent, strongly shows that it was never meant to charge him with it. The right of the wife to claim rents so collected can not be maintained where the facts require the inference that the parties did not intend that the husband should be charged.

The evil likely to result from permitting a wife to urge a claim against the estate of her deceased husband is well shown in the old cases. If a wife could exhaust her husband's estate by such a claim as that here asserted, it might often happen that creditors who had given credit in ignorance of the wife's claim would lose the greater part of their claims.

Judgment reversed, with instructions to grant the appellant a new trial.

Filed Nov. 21, 1883. Petition for a rehearing overruled Feb. 20, 1884.